Okay, we'll move on to our second case, which is number 19-10553, Tropical Paradise Resorts, LLC v. Point Conversions, LLC. Mr. Ferguson, whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Kenneth Ferguson, and I am appearing on behalf of the Counter Plaintiffs and Appellants, Point Conversions, LLC in this matter. The primary focus of this appeal concerns the District Court's error when it dismissed Point Conversions' Florida Deceptive and Unfair Trade Practices Act claims, also known as FDUFTA, for conflict preemption, but did so without any explanation or analysis as to how these allegations actually conflict with the congressional purposes and objectives of the Patent Act. Point Conversions respectfully admits the reason why no such analysis was provided is because the FDUFTA statute itself, and as applied by Point Conversions in its complaint, does not in any way impede or obstruct the purposes and objectives of patent law, but in fact, they support them. As a preliminary matter and procedurally speaking, unlike preemption, which is jurisdictional, defensive preemption is a substantive defense that must be raised by the appellees, as this Court made clear in Jones v. LMR in 2006. But because the appellees have not answered the complaint, this affirmative defense of conflict preemption has not been raised and it cannot be raised by the Court, so therefore it was procedurally premature. The District Court provided two reasons why Point Conversions' FDUFTA claims should be dismissed, and neither of which align with conflict preemption law. First, the Court found that Point Conversions' state law claims necessitate a determination of patent law issues, and therefore found them preempted. However, the Supreme Court has made clear that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction. But the cases you're relying on, Mr. Ferguson, are cases like that harken back all the way to American well works from the early 1900s, right? That's where it begins, Your Honor. However, this Court in MDS Canada in 2013, along with Gunn, buttresses those cases that dated all the way back to 1916. But isn't the problem that the Supreme Court has deviated from American well works in cases like the latest one is Grable and Sons from 2005? Yes, Your Honor. So in Grable, which has now been adopted, the four prongs of Grable have now been adopted into Gunn, the U.S. Supreme Court case in Gunn, which talks about the four prongs, the gun factors, which must be satisfied in order for a case to arise under patent law. So under those four prongs, Your Honor, the first prong is, are the patent issues necessarily raised? And again, for the case to arise under patent law, all four prongs of Gunn or then Grable have to be satisfied, and no Gunn or Grable analysis occurred in this case. Instead, they were eclipsed or being said that the case was preempted without saying why they were conflict preempted. Because per the Federal Circuit in Hunter Douglas, the Supreme Court has repeatedly confirmed that the federal patent law issues housed in state law causes of action are capable of being adjudicated even if there is no accompanying federal claim. So the U.S. Supreme Court Gunn, as this court did in MDS Canada, says that the resolution of a patent issue, it may be vitally important to the particular parties, but something more demonstrating that the question is significant to the federal system as a whole is needed. The district court thought that your counts one through three under FDUPTA were based on an underlying allegation that the use of a point-based reward program would expose customers to litigation liability. And the district court thought that there's no way you could make that allegation without showing that you were right on the underlying patent issues. Well, how did the district court get it wrong? Because the issue, Your Honor, turns on the diminished value of the product at the time of sale. It seems as though the district court may have put the cart before the horse there. The issue of FDUPTA and diminished value, it happens at what the customers knew at the time of sale. So when these customers are transferring points across program boundaries, they're unaware that they aren't actually able to do what the athletes say that they purport to be, that they can be transferred across program boundaries, but they cannot. And again, Your Honor, by way of example, there was a case that we cited in our brief, Morris versus ADT, where ADT sold security systems between 2002 and 2006. But they knew that there was going to be a problem with the security system in 2008. So at the time of sale, let's say a customer bought one in 2005, they didn't know that it wasn't going to work until 2000. They didn't know it wasn't going to work in 2008, but the seller did, ADT did. And courts have found that that is an inherent diminished value, meaning when they purchased the product at the time of purchase, they were buying a product which they assumed would work through 2008, but they didn't realize that it would not work then. But I thought that your claim was not that the product wouldn't work, but that customers would be exposed to litigation liability. Your Honor, they can continue to do so, but they are encumbered, meaning the value of the point itself, reward points transferability has an inherent value that is higher than those that cannot. So being able to transfer points across program boundaries, being able to transfer from Amex points to Delta miles, from Delta to Choice, that has a value. But the way in which the appellees are offering these points, they cannot be transferred in the manner in which they are saying without subjecting their customers to the litigation liability, which is encumbered by, again, the point conversions property rights. How are you harmed by that under ADDUCTA? Point conversions? Yes. Point conversions, Your Honor, is a software development company. So we are trying to enter our software into the marketplace, and so in doing so, and this ties to the declaratory judgment action that we were trying to seek, Your Honor, is we tried to send a letter out, a notice letter, and putting the world on notice, as we are allowed to do with a federal right, to put the world on notice that we have a license to a portfolio of patents. And in doing so, we found ourselves in federal court being sued under the Patent Troll Prevention Act. So we're trying to market our product into commerce, and we're unable to do so when the appellees are telling their consumers and their customers to go somewhere else, when in fact they're supposed to be directing them to us, which is what we were trying to put them on notice for. And it's often the case, Your Honor, there's a case that this court had recently transferred to the federal circuit and inspired development. It was decided recently by the federal circuit in 2019, but it's often the case that a licensee and a particular exclusive license benefits from the grant of the license, regardless of whether or not the infringing product is actually created. Now, granted, Point Conversion does have software, but the point is, for example, if the product is possibly but not certainly infringing, an entity may still want to procure a license to avoid the uncertainty of the litigation. But don't you have to prove, don't you have to make your claim stick on litigation liability for the customers? Don't you have to show both validity and likely infringement? Your Honor, I respectfully disagree with you in the sense that these patents have been issued. They have been issued by the USPTO. And according to Microsoft versus L4L in 2011, patents that have been issued, like the ones that Point Conversions have licensed, have a presumption of validity. I know, but that doesn't mean that they're valid. It just means they have a presumption. Don't you have to prove that they're valid and that they are likely being infringed by what Tropical Paradise Resorts is telling people? Your Honor, I believe that the standard, again, because these patents have been issued, there is no question as to their validity at this time. The only time the invalidity is in question is when the appellees answer and assert an invalidity affirmative defense, which at this procedural posture has not happened. And in respect to assuming infringement, at this procedural posture, the allegations as stated in plaintiff's complaint must be taken as true, so that much has to be assumed at this point, because neither defenses, affirmatives, or otherwise can be assumed by the hotels or appellees. In respect to the declaratory judgment actions, Your Honor, Point Conversion sent a letter in good faith and wanting to put, again, the appellees on notice of its software. Now, the court held that it would serve no useful purpose and that the court said that there was no active case in controversy, but respectfully, we were in federal court only because we were sued, so it's our position that it couldn't be a more active case in controversy because we were only there in the first place because Point Conversions was sued. And in respect to a state law cause of action like civil theft, we are required to put the appellees or the defendants on notice. So every time Point Conversions wants to give notice to the appellees or future customers, Point Conversions doesn't want to have to run the risk of wondering whether or not it's going to wind up in federal court again being sued under the Patent Trial Prevention Act. I have a question, and this is Judge Hall. Let's assume the same nucleus of facts. I know you didn't assert this claim, but would you have a claim against Roadway and Choice Hotels for infringing on the patents? Could you have brought a alleged infringement claim against him to violate your license to the patents? No, Your Honor, we cannot. In fact, that was made to express—I didn't mean to interrupt you. Why could you not? Just tell me why you couldn't. Your Honor, what Point Conversions possesses is an exclusive software right to use the portfolio of patents. We are not the patent holder, nor do we possess the rights to sue. And in our letter, Point Conversions specifically and expressly conveyed to the appellees that we do not possess the right to sue for federal patent infringement. So that is not a viable cause of action that Point Conversions can bring. Again, Point Conversions is a software development company with an exclusive license, and that is what it's trying to enforce. It does not have the rights to sue under the Patent Act for federal patent infringement. Okay, thank you very much, Mr. Ferguson. You've saved your time for rebuttal. May it please the Court that this is Edward Mullins of Reed Smith for the Appellee's Tropical Paradise and Choice Hotels. May I proceed, Your Honor? Yes, go right ahead. There are so many issues that I disagree with what we've just heard, but I want to point out just two fundamental aspects of this so there's no confusion. Cases such as MDS and Gunn are not relevant to this case. This is not a case of subject matter jurisdiction. The issue is whether or not there's conflict preemption. There was clearly jurisdiction here because Choice Hotels had followed a DEC action to declare the 174 patent invalid and not infringed, and the claims that were on appeal here are counterclaims that there's supplemental jurisdiction. So this is not an issue of subject matter jurisdiction, so those cases are completely irrelevant. The case law that the Court should focus on, what the trial court focused on, is the conflict preemption law. When you look at that law, one thing is abundantly clear, and Judge Hull clearly asked the right question, why have you not sued for patent infringement? And the answer is because they can't. They have absolutely no right to enforce these patents. They've admitted it repeatedly on appeal, and they just did so moments ago. And the ramifications of that are clear because what they're trying to do is enforce patents through a state law claim in which they have no rights to enforce. And there is absolutely no case that they cited, no case that exists, and is fundamentally contrary to the Patent Act to allow that claim to go forward. By doing so, it takes away the purpose of a patent. Only the patent owner can sue. It has the rights to enforce it. A patent, in fact, all that is is the ability to sue and say if you're practicing on these four or five elements of the patent, I have a right to stop you. A licensee with no patent enforcement rights has no right to do so. That alone, Your Honor, requires affirmance of this because that is a fatal omission to the case. They seem to think it helps them. It's fatal to the case. How did we get here? Let's talk about these patents. These patents are 31 patents. Of those patents, they're all owned by another company called JBS, not Point Conversions. There's a common ownership, but the claim here is not by JBS, but by Point Conversions. The patents that it's a licensee of, 31 of them, okay, they all have to do with basically converting points over boundaries. In other words, you have a loyalty program, you're able to convert them. What's very interesting here is three of them have been declared obvious, two of them by a federal court as unpatentable, ten of them have been expired. These are invalid patents. They are obvious, they're not enforceable. But let's go on. How we got here was they sent a letter, he just referenced it, where he attached a letter from JBS, the patent owner, saying to the franchisees that you're infringing. The cover letter from Point Versions says your customers could be infringing. So what they've basically done is switched their theory. At one point it was the franchisees infringe the patent, but then they're saying the customers infringe the patent. Either way, that's governed by patent law. If it's a direct infringement, it's governed by the patent law. If you're saying that you're helping your customers infringe, either as an inducement or contributory infringement, that's governed by patent law. But no matter what, a licensee has no rights to enforce that. Only the patent owner could do that. That's the whole point of a patent. And what's really disturbing about that letter, it actually says, you need to pay me, as a licensee, for these fees. In addition, you might have to pay for the patent owner. They don't say in the letter that it's actually the same person behind it. But it gets even worse, Your Honor. All you need to do, Honors, all you need to do is look at their own amended complaint. During the pendency of this litigation, before they amended, the first thing they did, we filed a deck etch in trying to stop this and say this patent's invalid for all the reasons I just said. They get an affidavit from Mr. Buchheit, who's behind both JBS and PC, and he says, I'm not going to sue you for patent infringement. And so you see what happened. The trial court says, well, they're not going to sue you for patent infringement. I'm going to dismiss your deck etch in validity. But at the same time, a month later, he goes to our client. This is all in the amended counterclaim. He goes to our client and says, I converted points, and I infringed these free patents, one of which was a 174 patent that we were trying to get declared invalid. So what they've basically done is the patent owner has stopped us from declaring that his patent's invalid, and they're trying to find a backdoor through the licensee, who has absolutely no rights, to try and enforce the patent. It's certainly absurd, and the trial court was 100% right. Under the case law, under the Hunter-Douglas and a number of the cases it cited, we can raise this on a motion to dismiss. When it's clear that all you're asking for is patent-like protection, then it's preempted. And on that case law, it's very clear and cites a bunch of trial court decisions, the Nova case in Delaware, Mayo Clinic, Carson, Bytemark, all these cases that if your claim, and Hunter-Douglas itself, if your claim is simply just another way to do patent infringement, then you've got to sue under patent infringement. But this is not a hard case, Your Honors, because when you go behind it, as I said earlier, this party has no ability to enforce the patent. And that distinguishes all their cases. They don't have a single case on a preemption where a licensee has been able to basically get around the Patent Act. And one case we cited we thought was really helpful to the court was a fed-certed case called Taveree v. MTP. And what happens in that case is at the motion-to-dismiss stage, Mr. Taveree was claiming he was a co-inventor. And he said that the other inventors who were listed on the patent had improperly licensed to a third party, and he wanted his share of the fees or the license fees. And the federal circuit says, look, under the patent law, they're allowed to do that. And you can't sue, and that case was unjust enrichment, you can't use a state law remedy to do something the patent allows. And we talked about how this does damage to the patent law. It does it in many ways. Mr. Mullins. Yes, Your Honor. This is Judge Jordan. Sure. One of the things that point conversion says in its brief is that there's general language in a Supreme Court case called Bonito Votes, which indicates that the law of unfair competition and state trade secrets law have coexisted harmoniously with federal patent law for a lot of time. And they infer from that statement that there is nothing inherently conflicted about pursuing an ad dupta claim in these circumstances. Could you tell me your response? Sure, Your Honor. I have multiple responses. The first, Bonito Votes, of course, found that the statute was preempted. In that case, it was a Florida statute that allowed essentially an unpatentable whole design law statute, invalid, because it conflicted with the patent law. We're not saying, and we've been very clear, that unfair competition is preempted as a field preemption by the Patent Act. We're saying this case is preempted. And so you can have a situation where somebody lies. For example, if I falsely advertise, oh, my stuff is patented, or I'm claiming some false statements, but there are no false statements alleged here. What they're alleging is, as you pointed out in your questioning, is essentially patent infringement. But beyond that, Your Honor, again, we talk about the reasons why this conflicts with patent law, which is why a reversal here would rud havoc to patent law, because you would be allowing a licensee who has absolutely no patent rights to try and enforce a patent. The law is clear. In the Bowers case, for example, a license only is, from the Federal Circuit, talks about a license is only the ability that point conversions has vis-a-vis JBS to practice on the patent. It exercises absolutely no rights against third parties, strangers to that contract. And the point is that what they've done is that this licensee, by the way, it's all the same person anyway, but just in their own theory, that this licensee is trying to enforce a patent against third parties, where it admits it cannot do so. That's clearly preempted. There's not a single case that's allowed that. But it's even worse. Your own question is, don't you have to prove infringement? And you're probably confused. Well, I thought you can enforce it. They can't enforce it. But you're 100% right. It's only a rebuttable presumption of validity, and there's certainly no presumption of infringement. So what they're basically saying is just because a licensee sends you a letter, you've got to stop practicing on the patent or engaging in a contributory infringement. A patent owner doesn't have those rights. You certainly can't allow it through a patent, a FDUCA claim. If they have a problem that this patent or they want enforcement, their complaint is against JBS. If they want to say, you know what, you're not enforcing your patents, you're not policing, that's potentially a breach of their license agreement, and they can go there. But they have no rights. There's absolutely no claim against strangers through that relationship, and therefore it's invalid.  If you look at their letter, they were asking for lost royalties for a license. They can't enforce on anybody. They have no right to enforce a license on anyone and get royalties. Those are just patent damages. The only entity that can get those is the patent owner. And in any event, these patents are invalid. In any event, we never got even a chance to argue that because he gives us this declaration saying, I'm not going to sue you for patent infringement. By the way, my licensee is going to sue you for the same thing, and you can't talk about it. So unless there's any other questions about the patent preemption argument, Your Honor, we'll leave it there. On the declaratory judgment, the trial court was completely correct. The claim, in the first place, we had sued JBS for invalidity. It was the owner of the patent, or we thought, that had enforcement rights at the time. It turns out that some enforcement rights have been returned to another party. But at the time, JBS is the original patentee. Again, we always sued point conversions under the Patent Control Act because we believe, and we still believe, and have brought in state court because our Patent Control Act claims were dismissed by discretion of a court. When she found that our trademark deck action had been mooted, Judge Bloom then dismissed our supplemental claims for Patent Control Act as her discretion not to go forward. And so we brought those in state court. If he has any issues, potentially if he can go forward in state court, then he could have raised those in conjunction with the claim in state court. As a trial judge noted, in any event, even if they said they're acting in good faith, their co-defendant, JBS, could not have, and that would not have solved the issue. So we do believe that the trial court was completely correct on the deck action. But in any event, so unless there's any questions, Your Honor, I will return it over to the court for any questions. Other than that, we rest on our brace. All right. Thank you very much. Mr. Ferguson, you've got three minutes for rebuttal. Yes, Your Honors. Thank you. Briefly, in respect to any comments about the JBS-HBM, they're not a party to this appeal. They're unrepresented. And, you know, any comments about that, I certainly can't speak on behalf of them. In respect to any sort of arguments as it relates to the actual patents themselves, those go to the facts at issue, which is not appropriate at this time for the motion to dismiss. In other words, issues of validity, invalidity, or otherwise, that invalidity argument has to be raised via affirmative defense, because right now the plaintiff's complaint must be taken as true and as pled. And these patents have been issued, and they have a presumption of validity. But can't you take judicial notice of the fact that some of the patents have expired and some of them have been invalidated? Yes, Your Honor, you can. And what does that do to your claim? It doesn't change the misrepresentations that the appellees are making to their customers, because... If some of those patents no longer have any force, either because of expiration or invalidity, how can the customers have any litigation liability, as you put it? If all the patents were invalid, and if they were all expired, Your Honor, there would not be, but that's not the facts, and that's not the case. Well, to answer the question as to... Counsel, answer the question as to the ones that have expired, just hypothetically. As to the ones that have expired and are no longer valid, your customers will not face potential liability for using this software, right? Correct, Your Honor, that would be accurate. And that's because for them to be liable, there has to be a valid patent. Correct, Your Honor. And to be clear, the... For them to be liable, as to whether or not there's liability at all as a reduced value, that is, that they might ultimately be liable, and therefore, at the point of sale, it wasn't as worth as much as they said. In order to determine that issue, as to the value at the time of sale and the potential liability, you would have to know whether or not the patents were valid or not. Ultimately, in this case, to prevail, that would have to be answered. Isn't that correct? I believe the answer is somewhat yes, but I want to make sure I'm clear on this. Let's go back. We just agreed that if some of the patents had expired and they were invalid, okay, we already know that, then these customers, that is, you like, you've... Roadway and Choice Hotels customers, you said what they sold them didn't have the value because of potential customer liability. If the underlying patents were an issue, the customers would have no potential liability. Is that correct? If all of the patents were invalid... I'm talking about to those that had expired. We know not all of them have expired, and we know not all of them have been validated, but a sizable portion have expired or been invalidated, correct? A portion of them have, yes, Your Honor. All right. There's no customer liability at issue, potential customer liability, with regard to those patents. Is that correct? That would be the case, Your Honor. All right. So those patents... And that couldn't have reduced their value at the point of sale, right? Correct. So what we're asking is, when you get to the patents that have not expired and that are not invalidated, to be able to determine whether or not the point of sale, there was a reduced value. I'm not saying I'm right. I'm just trying to make sure I understand it. The point of sale was there was a reduced value to the customer because of potential liability. That wouldn't necessarily require... It may be an affirmative defense, but it would necessarily, in this case, require to determine whether the patent was valid. The ones that you all have the license to. Right? No, Your Honor. Why? The patents have a presumptive... I don't have a presumptive, but if they say they aren't invalid and they have a presumption, you could still litigate that the patents were no good. Absolutely, Your Honor. And again, I would turn to this court's case in MDS Canada, where the dispute was between a licensee and a licensor. And the court said, to succeed on this claim, Nordian must prove that the RS-3400 infringes the licensed patents. So there wasn't an issue. It wasn't a federal patent law issue there. It was a contractual dispute. So just because the determination of patent laws are necessary doesn't necessarily mean it's preempted or that the court doesn't have jurisdiction to hear a state law claim. In fact, Gunn states, the U.S. Supreme Court, Gunn in 2013, is clear that the resolution of a patent issue, while it may be vitally important... Have you got any case that is anywhere near like this? I know you cite general principles from cases. What is the case that you say has a fact pattern that's anywhere near like this? Your Honor, I don't know if you have our brief before you, but there are cases out of Louisiana that are actually on point, that actually have a similar statute to Florida's Unfair Deceptive Trade Practices Act. It's the Louisiana Unfair Deceptive Trade Practices Act. No, I'm talking about where the underlying transactions and everything are similar to this. Where the patent holder says, I don't want to do it, and you're bringing a state... and you've licensed from him. I'm talking about those factual parallels, not that they have a fair trade practice. Your Honor, as far as the facts are concerned, in respect to this case in particular, there's no allegations as to what the patent holder... what they're willing to do and not willing to do. The only thing that Point Conversions has a right to do is enforce its license. It can't... Point Conversions... We understand that. We're not saying you're trying to enforce the patent, but we're saying that ultimately, that this case is going to require determination of the validity of the patent. Your Honor, I don't... To look at whether there's potential liability to the customers. And you're saying no, it's not, because you just presume it and they can't get into it. Are you saying Roadway and Choice Hotels would never be able to claim in this case in response to your counterclaim that the patent's invalid and so therefore there's no diminution in value at the point of sale? No, Your Honor. They can absolutely do that with an affirmative defense. And that's the crux of it, is that at this procedural posture, there's no way to determine... We know as an affirmative defense, that's kind of whether it comes by complaint. I mean, it's kind of odd because you're a counterclaimant, but nonetheless, let's accept for purposes that it's affirmative defense. But we know it's an affirmative defense that is going to have to be decided to see whether you prevail. It's not affirmative defense that's collateral. It's key affirmative defense to your claim. Am I wrong with that? If that's what they raise, Your Honor, they're certainly allowed to do that. But the anticipation, and the U.S. Supreme Court in Holmes talked about the anticipation of an affirmative defense is not going to override on the underlying cause of action or going to effectively eclipse it or turn it into a federal patent law case. Thank you. You've answered my question. I appreciate the time, Judge Jordan. Of course. Okay, Mr. Ferguson, thank you very much for your argument. Thank you, Mr. Mullins, as well. We really appreciate it. Thank you.